IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICIA M. RIVERA,

       Plaintiff,

v.                                                                                                          15cv593 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Patricia Rivera applied for disability insurance benefits on April 19, 2011, alleging disability beginning on December 13, 2010, from anxiety, depression, a hysterectomy to treat cervical cancer, thyroid cancer, interstitial cystitis, migraines, arthritis, and severe allergies. (Administrative Record "AR" 172, 202.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on her Motion to Reverse and Remand, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Rivera's reply. (Docs. 16, 20, 21.) For the reasons explained below, I grant Rivera's motion and remand this case to the SSA for proceedings consistent with this opinion.

### STANDARD OF REVIEW

In reviewing the Administrative Law Judge's ("ALJ") decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. I may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 404.1520(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 404.1520(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still

capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. § 404.1520(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Rivera is thirty-eight years old. (AR 172.) She "earned an associate degree in accounting" "eventually after about eight years" of school. (AR 827.) She previously worked as a clerk at a t-shirt shop, deli cook, driver, manager/cashier at a gift shop, and an office clerk. (AR 203.)

I do not address everything in the record but rather target my factual discussion to those facts necessary to the disposition of this case.

Rivera's treatment records begin in April 2008, when she started receiving counseling for depression at Mesa Counseling. (AR 716.) She attended one hour therapy sessions every week until May 2011. (*See* AR 716-73.)

Rivera began seeing Presbyterian Medical Group psychiatrist Karen Raburn, M.D., in April 2010. (AR 400.) Dr. Raburn diagnosed Rivera with dysthymia, major depressive disorder, acute stress disorder, and social anxiety. (AR 404.) Rivera saw Dr. Raburn every three to six weeks through April 2011. (AR 400-409). On December 23, 2013, Dr. Raburn completed a

Medical Assessment of Ability to do Work-Related Activities (Mental) and an Assessment of Adaption to Temperament Characteristics Required by Jobs. (AR 17-18, 20.) I discuss the findings of both assessments in more detail below.

In November 2010, Rivera began treatment with various providers at the Santa Rosa Medical Clinic. (AR 971-984, 993-1000.) On December 20, 2012, Rivera began treatment with certified family nurse practitioner Lisa Sims ("FNP-C Sims") (AR 977-78), and saw her four other times, with the final visit occurring on April 18, 2013 (AR 979-984, 995-97). FNP-C Sims noted Rivera's medical history of, among other things, asthma, migraine, depression, and anxiety (*see* AR 983), and noted that Rivera has fibromyalgia and allergies to pain medications (*see* AR 984).

On July 20, 2011, Mesa Counseling therapist Dave Crane, LPCC, wrote a letter to the Disability Determination Services stating that "Patricia has been a client since April 2008," "she cannot work," and that "[w]e have tried many different specialist [sic] and doctors and still we have no solution for her pain and illnesses." (AR 786.)

On August 25, 2011, Richard Fink, Ph.D., completed a disability determination mental status examination of Rivera. (AR 827-30.) He diagnosed her with "[m]ajor depression, moderate to severe" and "[a]nxiety attacks without agoraphobia." (AR 829.)

On September 1, 2011, state agency non-examining psychologist Dorothy Holmes, Ph.D., reviewed Rivera's medical records and concluded that she had moderate limitations in eight areas of functioning (*see* AR 98-99), including "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (AR 99).

On April 9, 2013, Andrea Leathers-Murmer, M.D., began treating Rivera at the Santa Rosa Medical Clinic. (*See* AR 993-94.) Dr. Leathers-Murmer noted the same medical history as FNP-C Sims but added "ADHD"—attention deficit hyperactivity disorder. (*Compare* AR 993 *with* AR 983.) Dr. Leathers-Murmer noted at the end of the form, however, that Rivera had "ATTENTION DEFICIT DISORDER OF CHILDHOOD WITHOUT HYPERACTIVITY." (AR 994.)

## ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on November 12, 2013. (AR 45.) At step one, she determined that Rivera had not engaged in substantial gainful activity since April 18, 2011. (AR 34.) At step two, the ALJ found that Rivera had the severe impairments of fibromyalgia, sero-negative rheumatoid arthritis, degenerative disc disease of the lumbar spine, stable chronic interstitial cystitis, chronic kidney disease, asthma, migraine headaches, obesity, obstructive sleep apnea, anxiety disorder, depression, and ADHD. (*Id.*) At step three, the ALJ concluded that Rivera did not have an impairment or combination of impairments that met or medically equaled anything in the Listing of Impairments. (*Id.*) The ALJ noted that Rivera has mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with concentration, persistence or pace, and "no episodes of decompensation, which have been of extended duration." (AR 36.)

At phase one of step four, the ALJ determined that Rivera had the RFC "to perform light work" with the following limitations:

> she can occasionally stoop and crouch; should never climb ladders or scaffolds; can frequently handle and finger; is able to understand, remember, and carry out simple instructions; can maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task; can have only

> occasional contact with the general public; and can have only occasional and superficial interactions with coworkers and supervisors.

(AR 37.) In making this determination, the ALJ found Rivera "not entirely credible" (AR 38), gave "the greatest weight" to "[t]he opinions of the experts who prepared the State Agency (DDS) reports" (AR 42), gave "Dr. Fink's opinions limited weight" (*id.*), gave "little weight" to statements from Dave Crane, LPCC, (*id.*), and gave "not . . . significant weight" to opinions from FNP-C Sims (AR 43).

At phases two and three of step four, the ALJ determined that Rivera "has past relevant work as an office clerk, a non-medical transport driver, a deli clerk, a motel desk clerk, a home health aide, and a clerk dispatcher," but concluded, based on testimony from a vocational expert, that Rivera is "unable to perform her past relevant work." (AR 44.)

Proceeding to step five, the ALJ heard testimony from the vocational expert and found that Rivera could perform other jobs existing in significant numbers in the national economy and was not disabled. (AR 44.)

Rivera then submitted new evidence to the Appeals Council and sought review of the ALJ's decision. (*See* AR 19.) The Appeals Council concluded that the "additional records from Linda Sims, FNP-C, Andrea Leathers[-]Murmer, MD and Karen Raburn, MD" were "about a later time" and "[t]herefore[ did] not affect the decision about whether [Rivera] w[as] disabled beginning on or before November 12, 2013." (AR 2.) The Appeals Council's denial of review made the ALJ's decision the final decision of the Commissioner. (AR 1.)

## DISCUSSION

Rivera cites four reasons to support reversing and remanding her case: (1) the Appeals Council committed legal error by failing to consider the additional evidence that was new,

material, and chronologically pertinent; (2) the ALJ improperly weighed Dr. Fink's medical opinion; (3) the ALJ improperly weighed Dr. Holmes's medical opinion; and (4) the ALJ failed to incorporate the limiting effects of Rivera's obesity throughout every step of the disability analysis. (*See* Doc. 16 at 2.) Because I agree with argument (1) and find legal error with the Appeals Council's rejection of Rivera's additional evidence, I decline to rule on the remaining arguments, as re-assessing the record with the additional evidence may adjust the ALJ's analysis on remand.

Rivera argues that the Appeals Council "committed legal error in determining that evidence submitted by Ms. Rivera was not new, material, and related to the period of Ms. Rivera's application." (Doc. 16 at 11.) She identifies six pieces of new evidence, two each from Dr. Raburn, Dr. Murmer, and FNP-C Sims, and argues that the Appeals Council and Commissioner misinterpreted the introductory sentences on the medical forms to justify the exclusion. (*See* Doc. 16 at 12-13; *see also* Doc. 21 at 1-3.)

The Commissioner responds that "[t]hese opinions are not part of the record" because "[t]he Appeals Council noted that these opinions were 'about a later time' and did not affect the decision about whether [Rivera] was disabled up through the date of the ALJ's decision . . . ." (Doc. 20 at 12.) As for the introductory sentences on the medical forms, the Commissioner argues that they "simply asked the providers to consider their past findings but did not ask them to give retrospective work limitations." (*Id.* (emphasis omitted).)

When the Appeals Council evaluates whether the ALJ's decision is supported by "the weight of the evidence currently of record," 20 C.F.R. § 404.970(b), it must consider whether the newly submitted evidence is "new," "material," and "chronologically pertinent." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th

Cir. 2011). Evidence is "new" when it is not "duplicative or cumulative," "material" when "there is a reasonable possibility that [it] would have changed the outcome," and "chronologically pertinent" when it "relates to the period before the ALJ's decision." *Threet*, 353 F.3d at 1191.

After the Appeals Council reviews the entire record—including the qualifying new evidence—under the standard provided in 20 C.F.R. § 404.970(b), the court may "properly review the denial of benefits . . . under the deferential substantial-evidence standard." *Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004). However, "[i]f the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings." *Id.* (alteration in original) (quotation omitted); *see also Threet*, 353 F.3d at 1191 ("If . . . the Appeals Council did not evaluate the entire record including the new evidence, that failure constitutes substantial legal error necessitating a remand for further proceedings . . . .").

The six new pieces of evidence that Rivera submitted to the Appeals Council, along with the associated disputed introductory sentences, are as follows:

(1) Medical Assessment of Ability to do Work-Related Activities (Mental) completed by Dr. Raburn on December 23, 2013 (AR 17-18);

"Please give us an assessment of how the patient's mental/emotional capabilities are affected by the impairment(s). Please consider the patient's medical history and the chronicity of findings as <u>from a year prior to initial visit to current examination</u>." (AR 17 (emphasis retained));

(2) Assessment of Adaption to Temperament Characteristics Required by Jobs completed by Dr. Raburn on December 23, 2013 (AR 20);

"I would appreciate if you could please determine if there has been a reduction in the ability for your patient ***to adapt to any of the Temperament characteristics required by jobs on account of his/her mental and physical impairment(s)***" (*id.* (emphasis retained));

(3) Medical Assessment of Ability to do Work-Related Activities (Non-Physical) completed by Dr. Leathers-Murmer on December 20, 2013 (AR 23);

8

      "Please give us an assessment of how non-physical work activities are affected by the impairment(s), injuries or sicknesses (e.g.[,] pain or fatigue). Please consider the patient's medical history and the chronicity of findings as from 2011 to current examination" (*id.*);

(4)    Medical Assessment of Ability to do Work-Related Activities (Physical) completed by Dr. Leathers-Murmer on December 20, 2013 (AR 24);

      "Please give us an assessment of patient's impairment-related physical limitations. Identify the particular medical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, symptoms (including pain and other subjective symptoms) etc.[)] which support your assessment of any limitations. Please consider patient's medical history and the chronicity of findings as from 2011 <u>to current examination</u>" (*id.* (emphasis retained));

(5)    Medical Assessment of Ability to do Work-Related Activities (Non-Physical) by FNP-C Sims on December 24, 2013 (AR 15);

      "Please give us an assessment of how non-physical work activities are affected by the impairment(s), injuries or sicknesses (e.g.[,] pain or fatigue). Please consider the patient's medical history and the chronicity of findings as from 2011 to current examination" (*id.*);

(6)    Medical Assessment of Ability To Do Work-Related Activities (Physical) completed by FNP-C Sims on December 24, 2013 (AR 16); and

      "Please give us an assessment of patient's impairment-related physical limitations. Identify the particular medical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, symptoms (including pain and other subjective symptoms) etc.,[)] which support your assessment of any limitations. Please consider patient's medical history and the chronicity of findings as from 2011 <u>to current examination</u>" (*id.* (underline retained)).

    Number (2) does not meet the three-part test in 20 C.F.R. § 404.970(b) because it is not chronologically pertinent. It was completed approximately one month after the ALJ issued her decision, and the introductory sentences do not contain specific language directing the medical provider to provide a retrospective evaluation.

9

The other five pieces of evidence, however, meet the three-part test from 20 C.F.R. § 404.970(b), so the Appeals Council's rejection of them constitutes reversible legal error under *Chambers* and *Threet*. Below, when I refer to "the evidence," I refer to numbers (1), (3), (4), (5), and (6).

The evidence is new—not duplicative or cumulative—because the ALJ did not have it prior to her decision, and the severity of the impairments noted in the evidence is not mirrored elsewhere in the record.

The evidence is material—i.e., it is reasonably probable that its consideration would have changed the outcome—because it contains severe impairments not accounted for in the RFC, which means its consideration significantly undermines the requirement that the RFC be supported by substantial evidence.

For instance, the RFC does not account for opinions from all three medical sources that Rivera had a marked limitation in her ability to "[c]omplete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods." (AR 15, 17, 23.) In addition, the RFC states that Rivera "can maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task," while Dr. Raburn found moderate-to-marked limitations in Rivera's ability to "[m]aintain attention and concentration for extended periods of time (i.e.[,] 2-hours [sic] segments)," and FNP-C Sims and Dr. Leathers-Murmer found moderate limitations in Rivera's ability to focus for two-hour time periods. (*Compare* AR 37 *with* AR 15, 17, 23.) Neither the ALJ nor the Appeals Council addressed these more restrictive medical opinions that contradict the RFC.

Lastly, the evidence is chronologically pertinent because it relates to a time period before the ALJ's decision. The Commissioner cites no case to support her argument that the first parts of the disputed sentences—which, admittedly, are phrased in the present tense—override the later parts of the sentences that contain underlines, bolded letters, or italics, and seek retroactive assessments. Rivera, on the other hand, points out in her reply that I entered a Proposed Findings and Recommended Disposition, which was later adopted, where I concluded (1) that the introductory sentence on the Medical Assessment of Ability to do Work-Related Activities (Mental)—which has not changed and is identical to the introductory sentence for number (1) above—required a retrospective assessment, and (2) that an even more retroactive timeline met the chronicity requirement. *See Alvarez v. Colvin*, No. CV 13-393 MV/WPL, Doc. 27 at 9, 17 (PFRD) (D.N.M. Oct. 31, 2014) ("Alvarez's first visit with Dr. Hall was on October 4, 2011," "[t]he ALJ's decision was issued on September 20, 2011," and "[t]herefore Dr. Hall's opinion related back to a period almost a year before the ALJ's decision".)

Here, Rivera's initial visits with all three providers pre-dated the ALJ's decision, so her retroactive assessments were more rooted in a provider-claimant relationship than in *Alvarez*. Specifically, the ALJ issued her decision in November 2013 (AR 45), and Rivera's initial visit with Dr. Raburn was in April 2010 (AR 927), her initial visit with Dr. Leathers-Murmer was in April 2013 (AR 993), and her initial visit with FNP-C Sims was in December 2012 (AR 977). Said another way, if *Alvarez* holds that the introductory sentences to new piece of evidence number (1) require a retroactive assessment and meet the chronicity requirement, even though the claimant's initial visit with the provider occurred after the ALJ's decision, then a retroactive assessment where the initial visit occurred before the ALJ's decision, which is the case here, also meets the chronicity requirement.

I note that Rivera's reply states that Dr. Leathers-Murmer and FNP-C Sims "both treated Ms. Rivera since September 2010" (Doc. 21 at 2-3), but the citations Rivera includes at the end of the sentence—"AR 927, 1000, 971" (*id.* at 3)—do not corroborate this timeline, nor do the pertinent record citations she supplies in the Background section of her Motion to Reverse and Remand (*see* Doc. 16 at 9). Nevertheless, the timeline I have constructed here still satisfies the chronicity requirement.

The Appeals Council indicated that it did not consider the new evidence under the standards in 20 C.F.R. § 404.970(b) when it stated that the "additional records from Linda Sims, FNP-C, Andrea Leathers[-]Murmer, MD and Karen Raburn, MD" were "new information" "about a later time." (AR 2.) Failing to consider the new evidence was error.

## CONCLUSION

The case is remanded to the SSA. On remand, the ALJ will consider the entire record, including the records from FNP-C Sims, Dr. Leathers-Murmer, and Dr. Raburn, pursuant to the standards set forth in 20 C.F.R. § 404.970(b) and in accordance with this Order.

IT IS SO ORDERED.

                                              William P. Lynch
                                              United States Magistrate Judge